## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE PROCTER & GAMBLE CO.,** | : | **MISC. CASE NO. 12-MC-392** |
| | : | |
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **BE WELL MARKETING, INC.,** | : | |
| | : | |
| Defendant | : | |

### MEMORANDUM

Presently before the court is third-party Adhesives Research, Inc.'s ("Adhesives") motion (Doc. 1) for a protective order or to quash subpoena and plaintiff Procter & Gamble Co.'s ("P&G") cross-motion (Doc. 7-1) to compel Adhesives's full compliance with the subpoena. For the reasons that follow, the court will deny Adhesives's motion (Doc. 1) to quash subpoena but will institute a protective order restricting disclosure of trade secret information to outside counsel's eyes only. The court will also grant P&G's cross-motion (Doc. 7-1) to otherwise compel Adhesives's full compliance with the subpoena.

### I.  Background

P&G and defendant Be Well Marketing, Inc., ("Be Well") are engaged in a patent infringement suit in the United States District Court for the Southern District of Ohio. (Doc. 1, at 1). P&G alleges that Be Well infringed on two patents concerning teeth whitening products. (Id.) On June 29, 2012, the Ohio court issued

a Protective Order ("the Ohio Protective Order") to govern discovery in that action. (Doc. 1-3, Ex. C).

Adhesives provides manufacturing services for Be Well's teeth whitening products. (Doc. 1, at 1). Specifically, Adhesives creates a coated adhesive product that it ships in bulk log rolls to Plitek, a packaging company. (Id. at 3). Plitek converts the log rolls into individual strips and packages the strips for shipment into the marketplace. (Id.)

P&G requested Adhesives to produce documents related to its manufacture of Be Well products. (Doc. 1, at 1). In response, Adhesives invoked the Ohio Protective Order's protections on October 16, 2012. (Doc. 7-4, Ex. N). On October 24, 2012, Adhesives produced approximately 400 pages of documents. (Doc. 1, at 2). The documents contain numerous redactions which Adhesives alleges are necessary to protect trade secrets related to its manufacturing processes. (Id.) After protracted negotiation, P&G issued a subpoena on Adhesives on November 6, 2012. (Doc. 1-2, Ex. B). The subpoena seeks the same categories of documents as P&G's original requests. (Doc. 1, at 6). P&G was not satisfied with the original document production but offered to accept the trade secret information on an "outside counsel's eyes only" basis. (Doc. 7-1, at 6).

Adhesives filed the instant motion on November 28, 2012. Adhesives requests the court to quash the subpoena or enter a protective order finding that Adhesives complied fully with the terms of the subpoena in its previous production.

2

(Doc. 1, at 4). P&G raises several deficiencies in Adhesives's original production. (Doc. 7). P&G requests the court to compel Adhesives's full compliance with the subpoena or, alternatively, enter a protective order limiting production of unredacted documents containing trade secrets to outside counsel's eyes only. (Id.) This issue is fully briefed and ripe for disposition.

## II. <u>Discussion</u>

Adhesives asserts that the presently redacted manufacturing information is not relevant to the underlying lawsuit. Adhesives also contends that the manufacturing information comprises confidential trade secrets. P&G requests Adhesives's full compliance with the subpoena. The court shall address each issue in turn.

### A. **Relevancy**

The redacted information concerning Adhesives's manufacturing or fabrication process is relevant to the underlying suit. Generally, parties may obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b). Relevant information includes any discovery "reasonably calculated to lead to the discovery of admissible evidence." Id. Adhesives contends that the requested manufacturing information is irrelevant because "the crux of the dispute is over the use of strips affixed directly to teeth to achieve whitening effects," not any patented manufacturing or fabrication process. (Doc. 2, at 1). However, in response to one of P&G's interrogatories, Be Well

asserted that its products do not infringe P&G's patents because they are manufactured in multiple layers and utilize "dry" components. (Doc. 7-4, Ex. R). Thus, Be Well's proposed non-infringement defense directly implicates Adhesives's manufacturing and fabrication process. The redacted information is relevant and may lead to the discovery of admissible evidence.

### B. Trade Secret Protection

Adhesives asserts that it should not have to provide P&G unredacted copies of documents containing confidential trade secret information. The Federal Rules of Civil Procedure permit district courts to issue protective orders for the disclosure of trade secrets or confidential information. See FED. R. CIV. P. 45(c)(3)(B)(I) (permitting a court to quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information"); FED. R. CIV. P. 26(c)(1)(G) (allowing protective orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way).

Courts utilize a three pronged analysis to determine whether to compel disclosure of trade secret information. The party resisting discovery must first establish that the information is a trade secret and that its disclosure would be harmful. The burden then shifts to the requesting party to demonstrate the information's relevance and necessity. If the information is relevant and necessary, the court must balance the requesting party's need for disclosure against the

4

resisting party's potential for injury.  See Rycon Specialty Foods, Inc. v. Wellshire Farms, Inc., Civ. A. No. 09-2092, 2011 U.S. Dist. LEXIS 37840, at *20 (M.D. Pa. Apr. 7, 2011).  Typically, courts will balance the parties' interests by entering a protective order limiting disclosure of trade secrets to counsel or the parties.  See Mycogen Plant Science, Inc. v. Monsanto Co., 164 F.R.D. 623, 626 n.7 (E.D. Pa. 1996).

Adhesives asserts that it is a competitor of P&G because P&G also manufactures and produces adhesive products.  (Doc. 2, at 8).  Adhesives claims disclosure of its trade secrets to such a competitor could be harmful.  (Id.)  However, the court examines whether a party will be harmed from disclosure by analyzing the injury that may result under an appropriate protective order.  Coca-Cola Bottling Co. v. Coca-Cola Co., 107 F.R.D. 288, 293 (D. Del. 1985).  P&G suggests limiting Adhesives's disclosure of unredacted documents to outside counsel's eyes only.  P&G's in-house counsel and its employees would not have access to Adhesives's trade secrets if the court were to enter such a protective order.  The protective order would negate any potential for harm resulting from disclosure.

Section 2.2 of the Ohio Protective Order allows parties to designate information as "highly confidential- attorney eyes only."  (Doc. 1-3, Ex. C).  This provision provides that such information may be disclosed only to:

>  (A) The outside attorneys of records and their employees who are engaged in assisting in this action;
> 
>  (B) Up to two in-house attorneys of a receiving party to whom disclosure is reasonably necessary for this litigation;

5

> > (C) Independent consultants or experts retained by the party or its attorneys in connection with this action, including technical experts, damage and industry experts, patent experts, and jury or trial consultants, together with their employees engaged in assisting in this action (including mock jurors), but only subject to the provisions of paragraph 2.4 below;
> >
> > (D) The court and its personnel;
> >
> > (E) Court reporters and their personnel engaged in proceedings incident to preparation for trial or engaged in trial;
> >
> > (F) Professional vendors and their employees, including copy services, trial graphics services, and translation services, engaged by counsel; and
> >
> > (G) Any person who is indicated on the face of a document to have been an author, addressee, or copy recipient of the document, or the original source of the information.
>
> (Id.) With the exception of (B), this provision will effectively accommodate Adhesives's interests in protecting trade secrets and other confidential information. This protective order already applies to third parties. (Doc. 1-3, Ex. C). Additionally, Adhesives affirmatively indicated its desire for this order to apply to its document production. (Doc. 7-4, Ex. N). The court shall issue an appropriate protective order requiring Adhesives to disclose unredacted versions of documents containing trade secrets to outside counsel's eyes only.

### C.   P&G's Cross-Motion to Compel

P&G filed a cross-motion to compel Adhesives to produce all documents responsive to P&G's subpoena. Adhesives does not object to any of P&G's document requests other than refusing to provide unredacted copies of documents revealing trade secrets. See FED. R. CIV. P. 45(c)(2)(B)(requiring that a third party must serve objections to a subpoena to produce documents "before the earlier of the time specified for compliance or 14 days after the subpoena is served."). P&G cites four additional deficiencies in Adhesives's document production: (1) requests where Adhesives produced some, but not all, responsive documents; (2) requests for samples; (3) requests where Adhesives did not produce any documents because it alleges that it does not manufacture the finished product; and (4) requests for information about the manufacturers or suppliers of raw materials. (Doc. 7-1, at 17-21).

P&G first alleges that Adhesives produced some, but not all, responsive documents for several different request categories. (See Doc. 1-2, Ex. A, Requests 2, 3, 4, 6, 7, 8, 10, 12, 16, 17, 19, 20, 21; Doc. 2, at 3-5). It is unclear why P&G believes that Adhesives "hand-picked" only a few responsive documents for these requests, but the court shall order Adhesives to provide a written certification that it has produced all documents responsive to P&G's subpoena.

Next, Adhesives refused to provide representative samples of its product and components thereof. (See Doc. 1-2, Ex. A, Request 14; Doc. 2, at 3-5). Adhesives

7

contends that any samples would need to be maintained in a refrigerated state and that they would provide "a" sample if P&G, at their cost, made arrangements for refrigerated transport. (Doc. 2, at 4). P&G contends that Adhesives must send "[r]epresentative samples of *all* of the Accused Products and *all* components thereof." (Doc. 1-2, Ex. A, Request 14) (emphasis added). P&G also avers that the producing party is responsible for the costs of discovery unless the party establishes that the production will subject it to "undue burden or expense". See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978) (stating that a responding party is responsible for the costs of compliance with a discovery request but that the party may request a protective order under Rule 26(c)). Adhesives did not make such a demonstration in the instant motion and the court shall compel Adhesives to provide samples at its cost.

Adhesives also did not comply with several document requests because it alleges that it does not manufacture or otherwise provide the "Accused Products" to which the document requests refer. (See Doc. 1-2, Ex. A, Requests 1, 5, 9, 11, 15, 18, 22; Doc. 2, at 3-5). The Adhesives subpoena defines the "Accused Product(s)" as

> any tooth whitening product that has been manufactured, used, imported, sold and/or offered for sale by Be Well, including, but not limited to, the products known as (i) Walgreens Dental Strips, (ii) CVS Pharmacy Superior Dental Strips, (iii) Good Neighbor Pharmacy Dental Strips, (iv) Lumen Brite 120, and (v) Lumen Brite 125. As used in these document requests, the term "Accused Product(s)" shall be construed to include one, any one or more, or all of the identified tooth whitening products.

8

(Doc. 1-2, Ex. B). P&G alleges that the term "Accused Product(s)" "is not limited to commercial products." (Doc. 7-1, at 19) (emphasis in original). On this basis, P&G contests Adhesives's response to Document Requests 1, 5, 9, 11, 15, 18, and 22. Adhesives's responses to Document Requests 9, 18, and 22 are adequate. Adhesives states that it does not have any documents responsive to Request 18 and that any documents responsive to Request 22 and 9 are already included in other documents provided. (Doc. 2, at 4-5).

Adhesives's responses to Document Requests 1, 5, 11, and 15 are deficient. The parties do not dispute that Adhesives manufactures at least part of the ultimate commercial product, regardless of whether Adhesives provides or manufactures the finished "Accused Products" as defined in the subpoena. Consequently, Adhesives must provide any documents in its possession relating to the model numbers, finished product specification, manufacturing, and manufacturing personnel organization of the Accused Products as set forth in Document Requests 1, 5, 11, and 15. If Adhesives does not possess such documents or if it has already produced all responsive documents, Adhesives shall provide a written certification to opposing counsel.

Finally, Adhesives did not respond to a request for information about its raw material suppliers because it considers their identities to be a commercial trade secret. (See Doc. 1-2, Ex. A, Request 23; Doc. 2, at 5). Consistent with the discussion *supra*, the court shall issue a protective order restricting any documents

9

that include references to Adhesives's raw material suppliers to outside counsel's eyes only.

### III. <u>Conclusion</u>

For the foregoing reasons, the court will deny Adhesives's motion (Doc. 1) to quash subpoena but will institute a protective order restricting disclosure of trade secret information to outside counsel's eyes only. The court will also grant, in part, P&G's cross-motion (Doc. 7-1) to otherwise compel Adhesives's full compliance with the subpoena. An appropriate order follows.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:     January 15, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE PROCTER & GAMBLE CO.,** | : | **MISC. CASE NO. 12-MC-392** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Conner)** |
| v. | : | |
| | : | |
| **BE WELL MARKETING, INC.,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 15th day of January, 2013, upon consideration of third-party Adhesives Research, Inc.'s ("Adhesives") motion (Doc. 1) for protective order or to quash subpoena and plaintiff Procter & Gamble Co.'s ("P&G") cross-motion (Doc. 7-1) to compel Adhesives's full compliance with the subpoena, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Adhesives's motion (Doc. 1) for protective order or to quash subpoena is DENIED in part and GRANTED in part:

   A. The motion to quash subpoena is DENIED.

   B. Disclosure of Adhesives's trade secret information, including documents referencing its raw material suppliers, is hereby RESTRICTED to outside counsel's eyes only, in accordance with the Ohio Protective Order § 2.2, (A), (C)-(G) (Doc. 1-3, Ex. C). Unredacted documents containing confidential trade secrets shall be disclosed only to:

      i. The outside attorneys of record and their employees who are engaged in assisting in this action;

ii. Independent consultants or experts retained by the party or its attorneys in connection with this action, including technical experts, damage and industry experts, patent experts, and jury or trial consultants, together with their employees engaged in assisting in this action (including mock jurors), but only subject to the provisions of § 2.4 in the Ohio Protective Order (Doc. 1-3, Ex. C);

iii. The Court and its personnel;

iv. Court reporters and their personnel engaged in proceedings incident to preparation for trial or engaged in trial;

v. Professional vendors and their employees, including copy services, trial graphics services, and translation services, engaged by counsel; and

vi. Any person who is indicated on the face of a document to have been an author, addressee, or copy recipient of the document, or the original source of the information.

2. P&G's cross-motion (Doc. 7-1) to compel Adhesives's full compliance with the subpoena is GRANTED in part and DENIED in part:

   A. Adhesives shall produce unredacted copies of documents containing trade secret information, including documents referencing its raw material suppliers, to outside counsel's eyes only, in accordance with the court's order.

   B. Adhesives shall produce representative samples of all of the Accused Products and all components thereof, at its cost, pursuant to P&G's Document Request 14. (See Doc. 1-2, Ex. B).

   C. Adhesives shall produce any and all documents in its possession relating to the model numbers, finished product specification, manufacturing, and manufacturing personnel organization of the Accused Products, pursuant to P&G's Document Requests 1, 5, 11, and 15. (See Doc. 1-2, Ex. B).

D.  Adhesives shall provide written certification that it has produced all responsive documents to P&G's document requests or that it does not possess any responsive documents.

E.  Adhesives shall comply with the provisions of this order by February 5, 2013.



       S/ Christopher C. Conner
       CHRISTOPHER C. CONNER
       United States District Judge